**In the Matter of Ron EVERMAN and Darlene Boggs Everman, Debtors.**

**Stanley W. KIESTER, Plaintiff,**

v.

**Ron EVERMAN and Darlene Boggs Everman, Defendants.**

**Bankruptcy No. 85–3078.**
**Adv. No. 86–21.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 19, 1987.

Mark A. Spence, New Port Richey, Fla., for plaintiff.

Stuart Symington Smith, Brooksville, Fla., for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case, and the matter under consideration is the dischargeability vel non of a debt admittedly owed to Stanley W. Keister (Keister) by Ron Everman, a/k/a Ron R. Everman, and Darlene Boggs, a/k/a Darlene Boggs Everman, the Debtors involved in this Chapter 7 case (Debtors). The Complaint filed by Keister in Count I sought a declaration that the liability of these Debtors to Keister is non-dischargeable, although the Count fails to specify the statutory basis for this claim. In Count II Keister alleges a non-dischargeability of the same debt based on § 523(a)(2)(A) of the Bankruptcy Code alleging that the Debtors obtained money from Keister on the basis of a materially false representation which was made with the specific intent of deceiving Keister.

The claim in Count III is based on § 727(a)(3)(5) of the Bankruptcy Code and sought an order denying the Debtors' discharge on the basis they have allegedly failed to explain satisfactorily any loss of assets or deficiency of assets to meet their liabilities.

In due course the matter was set for final evidentiary hearing, and prior to receiving evidence this Court considered the pleading and announced that inasmuch as the claim set forth in Count III is legally insufficient, that Keister's claim to deny the Debtors a discharge in general will be denied and this Count will be dismissed. Counsel for the plaintiff, having concurred that he does not intend to present any evidence in this Count, this left for consideration the viability of the claims asserted in Count I and Count II of the Complaint, that is, the dischargeability of a debt owed to the Plaintiff by the Debtors.

The facts relevant to the resolution of this controversy as appear from the record established at the final evidentiary hearing are as follows:

Prior to the time relevant to the present controversy Ron Everman and Darlene Boggs resided in the State of Indiana, and although they were not married to each other, they lived together. Ron Everman was employed on a full-time basis and earned an average annual salary in the approximate amount of $30,000.00. Darlene Boggs was owner and operator of a flower shop in Indiana. Sometime prior to 1983 Ron Everman and Darlene Boggs moved to the State of Florida and initially resided in the residence owned by a relative of Darlene Boggs. Keister, who was a resident of New Port Richey, Florida, at the time relevant to this controversy, recently lost his wife and being desirous of establishing contact for companionship called a telephone number which he obtained from a Baptist Church. The number was supposed to be the number of Darlene Boggs' cousin. The phone was answered by Ron Everman. As a result of this conversation Keister invited the Debtors to visit him in his home. Soon a friendship developed and they frequently met over a span of almost a year preceding the transaction which forms the basis of the present controversy. While it is in dispute, this Court is satisfied that during this time there were extensive discussions between the parties concerning the financial plight of the Debtors and also their desire to resume the operation of a flower business and especially their lack of funds to accomplish this goal.

Be that as it may, it is clear and without dispute that Keister agreed to co-sign the note (Pl's. Exh. # 2) for Darlene Boggs with NCNB Bank (NCNB) in the amount of $5,000.00. Darlene Boggs and Keister did submit a loan application to the Bank (Pl's. Exh. # 1) and the loan was granted. The loan was secured by a savings account maintained by Keister in the same bank. It appears that Darlene Boggs applied for a second loan and submitted a new loan application to NCNB (Pl's Exh. # 3), which loan was also granted by NCNB. NCNB again executed a promissory note on September 26, 1984, (Pl's. Exh. # 4) which note was also co-signed by Keister and again secured by Keister's savings account.

It is without dispute that the Debtors made at least nine payments, either directly or indirectly to NCNB on the first note and nine payments either directly or indirectly on the second note. The reason some payments were made indirectly is because some checks were made payable directly to Keister to reimburse him on the amount debited against his savings account by NCNB when NCNB did not receive the installment payment on the note. It is without dispute that during this time Darlene Boggs, in fact, operated a flower shop on a small and modest scale out of her residence and did attempt to expand the business by securing commercial accounts, some from banks and some from other retail establishments such as Barnett Bank, Hardee's, Waffle Shop, and the like and establish a regular place of business.

Neither of the two notes were ever signed by Ron Everman. It is admitted and without dispute that some of the proceeds of the loans were used to pay the personal debts and expenses of both Debt-

ors and was also used to pay some past obligations due to others. Darlene Boggs never, in fact, established an ordinary retail flower shop business and, of course, she is no longer in that business.

Basically these are the relevant facts as developed at the final evidentiary hearing on which the claim of non-dischargeability is based by the Plaintiff, Keister.

It is important to note at the outset what is and what is not involved in the matter under consideration. This is not a claim of non-dischargeability of a debt asserted by the party from whom money or property was obtained by the Debtor under false pretenses or false representations or by actual fraud, a claim which would be clearly within exception to discharge under § 523(a)(2)(A) of the Bankruptcy Code. What is involved in this adversary proceeding is a claim of non-dischargeability asserted by Keister based on the agreement by Kiester to accommodate Darlene Boggs and his agreement to co-sign the note executed by only one of the Debtors, Darlene Boggs. Thus, it is clear that no monies were ever actually borrowed from Keister.

Thus, the initial inquiry must be addressed first to the question of whether or not was any money or property obtained by these Debtors from this particular Plaintiff by false pretenses, misrepresentation or by actual fraud.

The claim of Keister against Darlene Boggs is based on the right of a co-maker of a note to be indemnified by a co-obligor in the event he is called upon to satisfy the joint obligations. This is basically a normal commercial transaction, and thus, this claim of non-dischargeability can only be sustained if this record warrants, first, that obtaining an agreement by Keister to co-sign the note was a species of property which would fall within the ambit of § 523(a)(2)(A), and second, if the answer is in the affirmative, whether or not such agreement was obtained by the Debtor or Debtors either by false pretenses, false representations, or actual fraud and representations on which the Plaintiff reasonably relied before he agreed to co-sign the notes in question.

To answer the first question is not without difficulty. At first blush one might conclude that obtaining a guarantee or an agreement to co-sign a note is not obtaining "money" or property. Moreover, there is authority to support the proposition, the procuring a guarantee of a party by false pretenses is obtaining "property" of a sort. *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971); *Hartman v. Utley (In re Schroeder and Co.)*, 335 F.2d 558, 560 (9th Cir.1964); *Hardie v. Swafford Brothers Drygoods Co.*, 165 F. 588, 590–591 (5th Cir.1908). Courts generally narrowly construe the exceptions to the discharge against the creditor and are always in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *In re Vickers*, 577 F.2d 683, 687 (10th Cir.1978); *Davidson-Paxon v. Caldwell*, 115 F.2d 189, 191 (5th Cir.1940); *Matter of Cross*, 666 F.2d 873 (1982).

■ Thus, it is clear that the burden lies with the creditor to demonstrate that a particular obligation of a debtor falls within one of the statutory exceptions. *Household Finance Corp. v. Danns (In re Danns)*, 558 F.2d 114, 116 (2d Cir.1977); *Kelley v. Conwed Corp.*, 429 F.Supp. 969, 972–973 (E.D.Va.1977).

■ The quantity and quality of the proof required to be presented by the creditor who challenges the dischargeability under this section must reach a degree of clear and convincing evidence. The fraud included in this section is the type of fraud which, in fact, involves moral turpitude or intentional wrong and fraud implied in law which may exist without imputation of bad faith or immorality is insufficient. *In re McAdams*, 11 B.R. 153 (Bankr.D.Ver.1980). *See also Underwood v. Ajax Rubber Co., Inc.*, 296 S.W. 964, 11 Am.B.R. (N.S.) 488 (Tex.Civ.B.P.1927); *In the Matter of Noble*, 42 F.Supp. 684 (D.Colo.1941).

■ The inducement of a person by the debtor to act as surety or guarantor of an obligation of the debtor, on which payment is subsequently made by such surety or guarantor, has been held to constitute

the obtaining of property within the exception. *In re Dunfee*, 219 N.Y. 188, 114 N.E. 52 (1916); *see also 1A Collier on Bankruptcy* ¶ 16.16[2], at 1631–32 (14th ed. 1978). Following the reasoning of these cases which accepted the proposition that obtaining guarantee is a species of property at least for the purpose of asserting a non-dischargeable claim under this Section, this Court is satisfied that Dorothy Boggs did obtain property of a kind from Keister. This leaves for consideration the question of whether or not was the agreement to co-sign the note obtained by these Debtors by false pretenses, misrepresentations of material facts, or by actual fraud. There is hardly any question and it is without dispute that the notes in question were only signed by Darlene Boggs. Thus, Ron Everman assumed no legal obligation to NCNB to repay any of the notes. Consequently, Everman had no legal obligation to indemnify Keister in the event Keister was called upon to pay on the notes or satisfy the notes. Absent an express indemnification agreement between Ron Everman and Keister, there could not be any liability which could form the basis of the claim of non-dischargeability against Everman.

This leaves for consideration the last question, the liability of Darlene Boggs. It is well to state that there is no question and it is well established that the burden of proof to sustain a claim of non-dischargeability is on the Plaintiff who must establish with the requisite degree of proof and according to some courts persuasive, all the operating elements of the claim of non-dischargeability. Thus, in order to prevail on this claim, it was the burden of Keister to establish that the Debtor obtained money or property, by misrepresentation or material false statement or by actual fraud, on which he reasonably relied, and as a result suffered damages and the statements were submitted with the actual intent to deceive or defraud. Considering the totality of the evidence in this record, the most that can be said is that the evidence is in equal balance and consistent both with the theory of Keister and with the Defendant Dorothy Boggs' views even if the record in the most charitable fashion in favor of the Plaintiff. There is ample evidence in this record to show that Dorothy Boggs intended to repay this loan. The fact of the matter is as noted earlier, there were, in fact, nine payments made on the first note and also at least nine payments made on the second note. This conduct totally belies the proposition that Dorothy Boggs never intended to repay this loan. The fact that she ultimately did not establish the flower business and used some of the proceeds of the loans to meet personal needs rather than to establish a flower shop is not really material. This being the case, this Court is satisfied that the Plaintiff failed to establish with the requisite degree of proof the operating elements of this claim of non-dischargeability and therefore, the Complaint shall be dismissed also as to Darlene Boggs also with prejudice.

A separate final judgment will be entered in accordance with the foregoing.